**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**KAREN ROMAGOSA,**
**Creditor,**

                              **Appellant,**

**-vs-**                                    **Case No.  6:06-cv-301-Orl-19JGG**

**ROBERT E. THOMAS, Trustee, for**
**the Estate of Dr. Gail Van Diepen,**
**P.A., Chapter 7 Debtor,**

                              **Appellee.**

_____

**ORDER**

This case comes before the Court on the following:

1.      Order (Doc. No. 1-11) of the United States Bankruptcy Court approving the Settlement Agreement and overruling the objection of Karen Romagosa, filed with the Court on March 10, 2006;

2.      Appellant's Initial Brief, filed by Appellant Karen Romagosa on April 5, 2006; (Doc. No. 20);

3.      Brief of Appellee, filed by Appellee Robert E. Thomas on May 9, 2006; (Doc. No. 34); and

4.      Appellant's Reply Brief, filed by Appellant Karen Romagosa on May 26, 2006.  (Doc. No. 37).

-1-

**Background**

The following facts are not in dispute.  In August of 1999, Dr. Gail Van Diepen registered a professional association, "Dr. Gail Van Diepen, P.A.," (hereinafter "the association"), to do business in the state of Florida as a medical services provider.  In 2001, both Van Diepen and the association were sued in Florida state court by former employees Pamela Brown and Karen Romagosa for breach of contract and unpaid wages.  On August 15, 2003, a jury found the association liable and awarded $20,694.44 to Romagosa and $17,067.88 to Brown.  The state court amended the judgment to include attorneys' fees incurred by the plaintiffs' joint counsel, Frederick C. Morello, P.A.[1]  The jury did not find Van Diepen liable on either of the claims and held that she had no personal liability to Brown or Romagosa.  (*See, e.g.,* Doc. No. 20, pp. 11-12; Doc. No. 34, p. 7).

In September of 2003, Van Diepen resigned from the association.  Van Diepen then registered Ormond Internal Medicine, LLC ("the LLC") with the State of Florida, Division of Corporations.  On September 18, 2003, the LLC began conducting business at the same location, utilizing Van Diepen's medical services.  Van Diepen also began liquidating, transferring, and disposing of the association's assets and medical equipment, some of which was transferred to the LLC.  In addition, the association appealed the judgment to the Fifth District Court of Appeal for the State of Florida.  (*See, e.g.,* Doc. No. 20, p. 13; Doc. No. 34, p. 7).

---

[1]     The breakdown of the Amended Final Judgment is as follows:  Romagosa was awarded $20,694.44 plus 6% interest per annum plus $32,030.00 in attorneys' fees and $25,68.23 in costs; Brown was awarded $17,067.88 plus 6% interest per annum plus $40,015.00 in attorneys' fees and $3,016.38 in costs.  *See, e.g.,* Doc. No. 29-17, p. 3, n. 1.

After learning of the formation of the LLC, Brown and Romagosa[2] instituted in January of 2004 supplementary proceedings against the association, the LLC, Van Diepen, and another company, Oceanfront Investment Group, LLC ("Oceanfront"), in a Florida state court .  Brown and Romagosa asserted claims for fraudulent transfer of assets, alter ego liability, mere continuation of a business, and *de facto* merger and sought to pierce the corporate veil of the LLC.  They also sought to hold Van Diepen personally liable for the judgment rendered against the association.  The defendants in the supplementary proceedings denied these allegations, and the parties began to prepare their respective motions for summary judgment.  (*See, e.g.,* Doc. No. 20, pp. 18-19; Doc. No. 34, p. 8).

On November 16, 2004, the association filed a petition for bankruptcy under Chapter 7 of the United States Code, Title 11, with the Bankruptcy Court in and for the Middle District of Florida.  Due to this filing both the association's appeal of Brown and Romagosa's judgment and the supplementary proceedings were stayed pending resolution of the bankruptcy petition.  Romagosa moved the Bankruptcy Court to lift the stay or to dismiss the bankruptcy proceedings and allow the underlying actions in state court to proceed to judgment.  (*See, e.g.,* Doc. No. 27-2; 27-3, filed on April 19, 2006).  This motion was denied by the Bankruptcy Court.  (*See, e.g.,* Doc. No. 27-14, filed on April 19, 2006).

The Bankruptcy Court then ordered the Bankruptcy Trustee, Robert E. Thomas, to evaluate the fraudulent transfer claims against the association as well as the alter ego, *de*

---

[2]      On January 20, 2004, Brown filed a petition for bankruptcy.  (*See* Case No. 3:04-bk-546-GLP).  Aaron Cohen is the Chapter 7 Bankruptcy Trustee in the Brown case, and Brown's bankruptcy estate owns her claim in the instant case. Cohen has filed no objection to the settlement agreement.

*facto* corporation, and mere continuation of a business claims against Oceanfront, the LLC, and Van Diepen. The Trustee was empowered to receive and review the association's pre-petition financial activity in addition to documents relating to the two state court actions filed against the association by Brown and Romagosa. In October of 2005, the Trustee entered into a negotiated settlement agreement with Oceanfront, the LLC, and Van Diepen. (*See* Doc. No. 29-18, filed on April 19, 2006). The agreement provided that Van Diepen would pay the bankruptcy estate $45,000 upon the Trustee's successful dismissal of the state court proceedings. (*See* Doc. No. 29-18). The agreement also contained a provision which would release Oceanfront, the LLC, and Van Diepen from future claims. (*See id.*). Romagosa objected to the settlement. (*See* Doc. No. 29-16, filed on April 19, 2006).

The Trustee, by and through his attorney, John Henry Meininger, presented the settlement to the Bankruptcy Court on November 16, 2005. (*See* Doc. No. 29-17, filed on April 19, 2006). In his Motion for and Notice of Proposed Compromise of Controversy,[3] and again at a hearing before the Bankruptcy Court,[4] the Trustee gave a detailed account of his findings. First, the Trustee identified potential claims against Van Diepen and the LLC for preferential transfer of assets, breach of fiduciary duty (against Van Diepen individually), avoidance of fraudulent transfers, and piercing the corporate veil.[5] (Doc. No. 29-17, p. 4). The Trustee valued the preferential transfer claim against the LLC at approximately $55,000.

---

[3]     Doc. No. 29-17.

[4]     Doc. No. 29-19, filed on April 19, 2006.

[5]     It appears that the Trustee did not identify any viable claims against Oceanfront. *See generally* Doc. No. 29-17 (noting that the creditors instituted claims against all three parties but identifying potential claims against only Van Diepen and the LLC).

(*See, e.g.,* Doc. No. 29-19, p. 4).

In evaluating the strength of the other claims, the Trustee found that there were some pre-petition transfers from the association to the LLC, but he indicated that the majority of the assets were either leased assets or Van Diepen's personal services. (*See, e.g., id.* at p. 4). Thus, because the Trustee could not liquidate most of the assets, he did not believe the value of such assets justified lengthy litigation. (*Id.*) Furthermore, the Trustee found that there was not a high chance of success of prevailing on the individual claim for breach of fiduciary duty against Dr. Van Diepen or the claim to pierce the corporate veil of the LLC or Oceanfront, and that such litigation would be long and costly. (*See, e.g., id.* at pp. 4-5). The Trustee noted that he felt the piercing argument in particular would be very difficult, and thus he did not feel comfortable pursing such claim in litigation.[6] (*See id.*). Finally, the Trustee found that if the parties pursued litigation instead of settlement, the estate would incur significant legal fees and expenses in an amount possibly equal to or greater than the $45,000 settlement. (*See* Doc. No. 29-17, p. 5). Because the underlying litigation was risky, the Trustee found, in his business judgment, that the settlement was in the best interests of the creditors and the estate. (*See id.* at pp. 5-6).

On February 9, 2006, a Judge for the United States Bankruptcy Court in and for the Middle District of Florida approved the settlement agreement and overruled Romagosa's

---

[6]     In his written motion, theTtrustee noted, *inter alia*, that Van Diepen and the LLC argued in response to the claims against them that the accounts receivable of the association were collected and used to repay legitimate debts of the association and that the formation of the LLC was implemented in order to take advantage of tax and business benefits that were not available to Florida corporations at the time the LLC was registered.

objections.  (Doc. No. 1-11).  In so holding, the Judge noted that the outcome of the state court litigation was uncertain at best and would be lengthy and costly, that the collection of a judgment would be difficult, that the claims were complex and litigation would significantly delay the administration of the estate, and that the settlement was in the best interests of the creditors.  (*See id.* at p. 3).  Finally, the Judge held that the settlement was reasonable and did not fall below the lowest point in the range of reasonableness.  (*Id.*)

Romagosa, the appellant, now appeals the decision of the Bankruptcy Court.[7]  In her appeal, Romagosa first argues that the Bankruptcy Court did not follow the applicable criteria for governing review of motions to compromise a controversy.  (*See* Doc. No. 20, pp. 28-37).  Secondly, she argues that the Bankruptcy Court erred in failing to consider the prevailing standard for approving bankruptcy settlements involving the release of non-debtor third parties.  (*See id.* at pp. 37-43).  Next, Romagosa asserts that the settlement violated the *Rooker-Feldman* doctrine and should be reversed.  (*See id.* at pp. 43-46).  Finally, she argues that the Order approving the settlement failed to adequately consider the viability of Romagosa's fraudulent transfer and alter ego liability claims.  (*See id.* at pp. 46-55).

In response, Thomas, the appellee, argues that the Bankruptcy Court's Order was reasonable, in the best interests of the creditor and the estate, and not clearly erroneous.  (*See* Doc. No. 34).  Thomas contends that the Order adequately applied the prevailing standards,

---

[7]     The Appellant is admonished to adhere to the Local Rules for all future filings with this Court.  Absent prior permission of the Court, no party is permitted to file a memorandum of law in excess of twenty (20) pages in length.  *See* Local Rule 3.01(c); U.S. Bankr. Ct. M.D. FL Local Rule 9033-1(b).   Appellant's initial brief, numbering fifty-six (56) pages, is far from being in compliance with the Local Rules.

adequately weighed the viability of Romagosa's claims, and simply reflects the Trustee's business judgment that many of the claims did not have a high likelihood of success.  (*See id.* at pp. 13-21).  Finally, Thomas argues that because the parties released by the settlement agreement were not third parties but were instead parties involved in state court litigation with the association, the cases cited by Romagosa are inapposite.  (*See id.* at pp. 11-13).

There is no dispute among the parties that jurisdiction is proper pursuant to 28 U.S.C. Section 158(a) and Federal Rule of Bankruptcy Procedure 8001.  *See* 28 U.S.C. § 158(a); Fed. R. Bankr. P. 8001; Doc. No. 20, pp. 7-8; Doc. No. 34, p. 5.

## Standard of Review

The United States District Court functions as an appellate court in reviewing decisions of the United States Bankruptcy Court.  *See, e.g., In re Colortex Indus., Inc.*, 19 F.3d 1371, 1374 (11th Cir. 1994).  While the Court reviews *de novo* the legal conclusions of a bankruptcy court,[8] under Federal Rule of Bankruptcy Procedure 8013, "findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."  *See In re Thomas*, 883 F.2d 991, 994 (11th Cir. 1989), *cert. denied*, 497 U.S. 1007 (1990).  A finding of fact is clearly erroneous when the Court finds that "although there is evidence to support [the Bankruptcy Court's] finding, the reviewing

---

[8]     Under *de novo* review, this Court independently examines the law and draws its own conclusions after applying the law to the facts of the case, without regard to decisions made by the Bankruptcy Court.  *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 (11th Cir.2001) ("*De novo* review requires the court to make a judgment independent of the bankruptcy court's, without deference to that court's analysis and conclusions.").  *See also In re JLJ, Inc.*, 988 F.2d 1112, 1116 (11th Cir.1993).

court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). While a bankruptcy court's conclusions of law are reviewed *de novo*, the standard of review as to a bankruptcy court's decision to approve a settlement is abuse of discretion. *See, e.g., Rivercity v. Herpel* (*Matter of Jackson Brewing Co.*), 624 F.2d 599, 602-03 (5th Cir. 1980). The burden of showing clear error falls on the party seeking to overturn a bankruptcy court's findings. *In re Caribbean K Line, Ltd.*, 288 B.R. 908, 911 (S.D. Fla. 2002).

## Analysis

### A. *Rooker-Feldman* Doctrine

Romagosa argues that the Bankruptcy Court's approval of any settlement agreement in the instant case which allows for the release of Oceanfront, the LLC, and Van Diepen violates the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine is a set of legal principles grounded in federalism and *res judicata* which serves to prevent unsuccessful state court litigants from re-litigating state court cases in federal district court. *See generally Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Thus, according to the doctrine, federal district courts lack subject matter jurisdiction to review the judgments of a state court; litigants who believe they have been wronged by a state court ruling must appeal the adverse decision through the state appellate courts and then to the United States Supreme Court. *See, e.g., Feldman*, 460 U.S. at 482. "Like *res judicata* and collateral estoppel, the *Rooker-Feldman* doctrine is intended to ensure that litigants do not take multiple bites from the same apple." *Bosdorf v. Beach,* 79 F.Supp.2d 1337, 1340 (S.D. Fla. 1999) (citing *Bryant v. Sylvester*, 1995 WL 265303 at

*3 (3d Cir. 1995) (vacated on other grounds, 516 U.S. 1105 (1996)).

Romagosa's argument is without merit.  As the Supreme Court has recently instructed, the *Rooker-Feldman* doctrine occupies a very "narrow ground" in the field of federal jurisprudence:

> The *Rooker-Feldman* doctrine ... is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.  *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).  Clearly, the *Rooker-Feldman* doctrine merely serves to preclude subsequent review of state court civil judgments on the merits, which is not what the Bankruptcy Court did in the instant case. *See, e.g., In re Ring* 138 Fed. Appx. 834, 836 (7th Cir. 2005) (rejecting a similar argument). Thus, the Court holds that approval of the settlement agreement at issue does not offend the narrow grounds of the *Rooker-Feldman* doctrine.

## B.  Requirements for Approving the Release of Non-Debtors

Romagosa does not dispute that the Bankruptcy Court has the broad power to approve settlement agreements which release non-debtors or enjoin or effectively bind a creditor's suit against the debtor.  *See, e.g., Matter of Munford, Inc.*, 97 F.3d 449, 455 (11th Cir. 1996); *In re Grau*, 267 B.R. 896, 898-99 (Bankr. S.D. Fla. 2001).[9]  Romagosa argues,

---

[9]     For instance, in *Munford*, the Eleventh Circuit affirmed a district court's ruling that 11 U.S.C. § 105 and Federal Rule of Civil Procedure 16 authorized a bankruptcy court to permanently enjoin non-settling defendants from asserting contribution and indemnification claims against a defendant consulting firm when

however, that the Bankruptcy Court erred by approving a settlement which provides for the release non-debtors Van Diepen and the LLC without first making the requisite factual findings required under *In re Transit Group, Inc*., 286 B.R. 811, 816 (Bankr. M.D. Fla. 2002). Thus, Romagosa argues that the Order approving the settlement should be reversed due to this procedural error by the Bankruptcy Court.

Romagosa's argument is not well taken as the *Transit* case is inapplicable to the case at bar. First, and most importantly, the *Transit* case dealt with the confirmation of a plan of reorganization pursuant to Chapter 11. *Transit*, 286 B.R. at 816-17. Thus, the context in which the *Transit* test was articulated was far different from the instant Chapter 7 proceeding. In fact, most of the factors present in the *Transit* test make no sense in the context of the instant Chapter 7 proceeding. *See id*. at p. 817 (stating that the court should consider, *inter alia*, the contributions of the non-debtor to the reorganization; whether the action is "essential to the reorganization"; whether the impacted classes have voted to accept the plan; whether the plan provides a mechanism to pay the classes affected, *etc.*). The Court's independent research has not produced a single case within the Eleventh Circuit which applies the *Transit* factors to a case factually similar to the case at bar.

Another important distinguishing factor between the *Transit* case and this case is the nature of the non-debtors. Unlike the *Transit* case, the settlement agreement in the instant case sought to release Van Diepen and the LLC, both of whom actually signed the settlement agreement and have been impleaded as third party defendants in the

---

the permanent injunction was integral to the debtor's settlement with the consulting firm and the bar order was both fair and equitable. *See Munford*, 97 F. 3d at 455.

supplementary proceedings in state court. (*See, e.g.*, Doc. No. 29-17; 29-18; 37, p. 6). Thus, the releases relate directly to the underlying state court litigation and the parties involved with such litigation. The Court questions whether in the instant factual scenario Van Diepen and the LLC would even be considered "third parties" under the *Transit* analysis.[10] Thus, the Court finds that *Transit* is wholly inapplicable to the instant case.

## C.  Approval of the Settlement

Romagosa raises two additional arguments in her appeal regarding the approval of the settlement. First, she argues that the Bankruptcy Court failed to consider or properly weigh the probability of success on Romagosa's state law claims of fraudulent transfer and alter ego liability. A second, related argument asserts that the Order approving the settlement agreement fails to meet the applicable criteria articulated in *In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir. 1999), governing approvals of motions to compromise a controversy. Thus, Romagosa claims that when the evidence and *Justice Oaks* factors are properly weighed, the only conclusion that can result is that the settlement agreement is unreasonable.

A bankruptcy court faced with a motion to compromise a controversy has a duty to apprise itself of all necessary facts to make an intelligent evaluation and to make an independent judgment as to whether the settlement presented is fair and equitable. *See, e.g., Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp.*, 68 F.3d 914 (5th Cir. 1995); *In re*

---

[10]     *See Transit*, 286 B.R. at 815 ("The plan also seeks to grant broad releases to non-insiders, including members of the Unsecured Creditors Committee, GE Capital Corporation and Congress Financial Corporation." (internal abbreviations omitted)).

*Vasquez,* 325 B.R. 30, 36 (Bankr. S.D. Fla. 2005). A bankruptcy court is not obligated to actually rule on the merits of the various claims; it simply must assess the probability of success of such claims. *Justice Oaks*, 898 F.2d at 1549. A bankruptcy court should only approve a settlement when it is fair and equitable and in the best interests of the estate. *Connecticut General*, 68 F.3d at 917. While the desires of the creditors are not binding, a court should carefully consider the wishes of the majority of the creditors. *Vasquez*, 325 B.R. at 36. Finally, a court is neither to "rubber stamp" the trustee's proposals nor to substitute its judgment for that of the trustee, but rather to "canvass the issues" and determine whether the settlement falls "below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir.1983); Fed. R. Bankr. P. 9019. A bankruptcy court may certainly give weight to the trustee's informed judgment that a compromise is fair and equitable. *E.g., In re Southeast Banking Corp.*, 314 B.R. 250, 273 (Bankr. S.D. Fla. 2004).

In the case at bar, the Court finds that the Bankruptcy Court committed no procedural or substantive error and that the settlement was fair, equitable, and not below the lowest point in the range of reasonableness. The Court first notes that public policy strongly favors pretrial settlement in all types of litigation. *Munford*, 97 F.3d at 449; *In re Bicoastal Corporation*, 164 B.R. 1009 (Bankr. M.D. Fla.1993). The rationale behind this policy is that litigation, depending upon its complexity, "can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *Munford*, 97 F.3d at 455; *Wald v. Wolfson* (*In re U.S. Oil and Gas*), 967 F.2d 489, 493 (11th Cir.1992). Furthermore, litigation costs are particularly burdensome

-12-

on the bankruptcy estate given the financial instability of the estate.  *Munford*, 97 F.3d at 455.

Contrary to her assertions, there is no evidence that the Trustee or the Bankruptcy Court failed to consider the likelihood of success of Romagosa's alter ego, *de facto* corporation, mere continuation of a business, or fraudulent transfer claims; rather, the Judge concurred with the Trustee's assessment that the cost of litigation outweighed the likelihood of success.  (*See* Doc. No. 1-11, p. 3).  A review of the record on appeal reveals that most of the assets held by the association were leased assets.  Dr. Van Diepen personally owned the building where the association conducted business, and the association was in a month-to-month lease which could be cancelled at any time.  Many of the physical assets owned by the association, such as used computers and medical equipment, were depreciating rapidly. (*See, e.g.,* Doc. No. 29-4, Exs. 34).  Finally, a sale of the association's patient list to generate income, which Romagosa urged, may be restricted under federal privacy laws such as HIPAA and may have resulted in additional litigation.  *See* 45 C.F.R. §§ 164.501, 164.508; U.S. DEPT. OF HEALTH AND HUMAN SERVICES, STANDARDS FOR PRIVACY OF INDIVIDUALLY IDENTIFIABLE HEALTH INFORMATION 25-28 (2003) (stating "covered entities may not sell lists of patients or enrollees to third parties without obtaining authorization from each person on the list" ).  The Bankruptcy Court committed no error in finding that continuing such uncertain and costly litigation would not be in the best interests of the creditors and the estate.

Furthermore, upon an examination of the record, the Court concludes that the Trustee did not err in its finding that there was not a high probability of success regarding these

-13-

claims.  All of Romagosa's claims in the supplementary proceedings are different theories for piercing the corporate veil and holding the successor corporation liable for the debts of the predecessor.  *See, e.g., Bernard v. Kee Mfg. Co.,* 409 So. 2d 1047, 1049 (Fla. 1982) (courts will not "impose the liabilities of the selling predecessor upon the buying successor company unless (1) the successor expressly or impliedly assumes obligations of the predecessor, (2) the transaction is a de facto merger, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor").  In order to pierce the corporate veil, Romagosa would have to show that "the corporation was a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose." *See Dania Jai-Alai Palace v. Sykes*, 450 So. 2d 1114, 1117 (Fla. 1984).

Romagosa offers no argument that Oceanfront should be held liable for the association's debts.  With respect to Van Diepen and the LLC, Romagosa argues that under Florida law, there would be a high probability of success of holding both of these parties liable.  However, the facts in the instant case demonstrate otherwise.  The undisputed facts that Van Diepen wholly owns the LLC and that the new company formed shortly after judgment are not nearly sufficient to demonstrate successor liability.  *See Mason v. E. Speer & Associates, Inc.*, 846 So. 2d 529 (Fla. 4th DCA 2003); *Rashdan v. Sheikh*, 706 So. 2d 357, 357-58 (Fla. 4th DCA 1998).  In addition, the association did not, as Romagosa contends, transfer "substantially all" of its assets to the LLC and Van Diepen, and those assets which

-14-

were transferred were independently evaluated and acquired after paying fair market value.[11]

Romagosa also argues that several shareholder loans between Van Diepen and the association would warrant piercing of the corporate veil but offers no evidence that the association was not adequately capitalized.  Furthermore, to the extent that such loans were not taken into account by the Trustee in evaluating the viable claim against the association for $55,000, the Trustee points out that the association and Van Diepen by December of 2003 had repaid each other and that the association owed Van Diepen less than $4000 in unpaid shareholder loans.  (Doc. No. 29-14, pp. 99-100).  Furthermore, the association's accountant testified that in his experience he did not believe Van Diepen engaged in mismanagement and treated the association like "her own checking account."  (*Id*. at p. 103).  In short, the Court finds no evidence to suggest a high probability of success on a claim to pierce the corporate veil.

Likewise, Romagosa's argument that the Bankruptcy Court failed to adhere to the first *Justice Oaks* factor by undervaluing the preferential transfer claim lacks merit.  There is no evidence that the Trustee or the Bankruptcy Court significantly undervalued the viable

---

[11]     Most of the furniture belonging to the association was purchased by an independent medical company.  (*See* Doc. No. 29-14, Deposition of Robert W. Stern, pp. 66-67).  The association still owns several storage cabinets, a copier, a fax machine, and computer software.  (*Id*. at pp. 67-68, 74).  The LLC purchased the examination tables after an independent third party appraised their value. (*Id.*) Smaller pieces of medical equipment were also sold to the LLC after being valued by an independent party.  (*Id*. at pp. 69-70).  Leased equipment, such as telephones, were returned to the owners.  (*Id*. at p. 73).  Artwork purchased for the association was bought by Van Diepen individually at the same amount the association paid for it.  (*Id*. at. p. 77).  Most of the used computers were purchased by a third party for parts, (*id*. at p. 87), although the LLC purchased some computer equipment after an independent evaluation by a third party.  (*Id*. at. p. 92).

preferential transfer claim against the association.  First, it is unlikely, as the Trustee concluded, that Romagosa could prove actual or constructive fraud on the part of Van Diepen.  Secondly, while Romagosa correctly states that under Florida law courts may reach back four years to recover avoidable transfers,[12] this does not demonstrate that the preferential transfer claim was undervalued.  It is untrue, as Romagosa argues, that the Trustee only examined transfers from one year prior to the filing of the petition for relief and later.  The Trustee  specifically stated in his written motion to approve the settlement that he examined, *inter alia*, transfers by Van Diepen to the association in September of 2003, more than fourteen months before the petition was filed, demonstrating that the Trustee did not, as alleged, adhere to a strict one-year reach back period.  (*See* Doc. No. 29-17, p. 2).

Lastly, the Court finds the Judge did not err in concluding pursuant to the fourth *Justice Oaks* factor that the settlement was in the best interests of the creditors and the estate. The association had five creditors.  Romagosa makes no argument that the Judge incorrectly determined that continued litigation would be lengthy and costly.  Furthermore, of the five creditors, only Romagosa and her attorney, Mr. Morello, objected to the settlement agreement.  (*See, e.g.,* Doc. No. 29-19 at p. 15).  While Romagosa argues that she and Brown represent seventy-one percent (71%) of the value of the unpaid creditor claims, this argument is disingenuous, as Brown has voiced no objection to the settlement agreement. Thus, the Bankruptcy Court did not err in holding that a majority of the creditors did not object to the settlement.

---

[12]     *See, e.g., In re World Vision Entertainment*, 275 B.R. 641, 655 (Bankr. M.D. Fla. 2002).

The approval of a proposed settlement does not depend upon establishing as a matter of legal certainty that the subject claim or counterclaim is or is not worthless or valuable. *Florida Trailer and Equipment Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960). The probable outcome in the event of litigation, the relative advantages and disadvantages of litigation are, of course, relevant factors for evaluation, and the Bankruptcy Court need not resolve each disputed matter in determining the propriety of the settlement. Rather, the Judge may, and should, make a pragmatic decision on the basis of all equitable factors. *Id.* The Court finds that in the instant case, the Bankruptcy Judge did not abuse his discretion in approving the motion for compromise and concluding that a $45,000 settlement, where the Trustee had identified only a $55,000 viable claim against the association were the state court litigation to continue, did not fall below the lowest point in the range of reasonableness. Furthermore, the Bankruptcy Court committed no substantive or procedural error in evaluating the Trustee's motion to approve the settlement.

## Conclusion

Based on the foregoing, the Court **AFFIRMS** the Order of the United States Bankruptcy Court approving the settlement agreement and overruling the objection of Karen Romagosa. (Doc. No. 1-11).

**DONE** and **ORDERED** in Chambers in Orlando, Florida this _25th__ of July, 2006.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record